Kirstin E. Muller, Bar No. 186373
kmuller@hkemploymentlaw.com
HIRSCHFELD KRAEMER LLP
233 Wilshire Boulevard Suite 600
Santa Monica, California 90401
Telephone: (310) 255-0705
Facsimile: (310) 255-0986

Attorney for Defendant
BANDON FITNESS (TEXAS), INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MICHAEL E. OSLEY JR., individually and on behalf of all others similarly situated,

Plaintiff,

v.

BANDON FITNESS (TEXAS) INC. and DOES 1 through 50, inclusive,

Defendant.

Case No. '24CV0995 MMA SBC

[San Diego Superior Court Case No. 37-2024-00011471-CU-OE-CTL]

**NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**

**[28 U.S.C. §§ 1332, 1441(a), and 1446]**

[*Filed concurrently with Civil Cover Sheet; Notice of Interested Parties; and Supporting Declarations of Kirstin E. Muller, Jeffrey Kiecke, and Erika Hobson*]

**Complaint Filed:** March 11, 2024
**FAC Filed:** May 7, 2024

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

**TABLE OF CONTENTS**

I. BACKGROUND AND PROCEEDINGS IN STATE COURT .......... 1
II. COMPLIANCE WITH STATUTORY REQUIREMENTS .......... 2
III. GROUNDS FOR REMOVAL ON THE BASIS OF DIVERSITY .......... 3
A. Complete Diversity of Citizenship Exists Amongst the Parties. .......... 3
B. The Amount in Controversy Exceeds $75,000. .......... 5
1. Failure to Pay Minimum Wages .......... 7
2. Failure to Pay Overtime Wages .......... 8
3. Meal and Rest Break Violations .......... 9
4. Untimely Payment of Wages .......... 11
5. Wage Statement Violations .......... 12
6. Waiting Time Penalties .......... 14
7. Failure to Reimburse Business Expenses .......... 15
8. PAGA Penalties .......... 16
9. Statutory Attorneys' Fees .......... 26
10. Summary of Amount in Controversy .......... 27
IV. CONCLUSION .......... 28

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132 ........ 15

*Arreola v. Finish Line*, 2014 U.S. Dist. LEXIS 170464 (N.D. Cal. Dec. 9, 2014) ........ 7

*Bank of Cal. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F. 2d 489 (9th Cir. 1972) ........ 6

*Biag v. King George – J&J Worldwide Services, LLC*, 2020 U.S. Dist. LEXIS 129528 (S.D. Cal. Jul. 22, 2020) ........ 16

*Cabrera v. South Valley Almond Co., LLC*, 2021 U.S. Dist. LEXIS 940881 ........ 13

*Calderon v. BKB Constr., LP*, 2017 WL 2618094 (N.D. Cal. Jun. 16, 2017) ........ 14

*Caterpillar Inc. v. Lewis*, 519 U.S. 61 (1996) ........ 3

*Chavez v. Pratt (Robert Mann Packaging, LLC)*, 2019 U.S. Dist. LEXIS 59399 (N.D. Cal. Apr. 5, 2019) ........ 14

*Feltzs v. Cox Commc'ns Cal., LLC*, 2022 U.S. Dist. LEXIS 165467 (C.D. Cal. 2022) ........ 11

*Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150 (9th Cir. 1998) ........ 26

*Glass v. UBS Fin. Servs.*, 331 F. App'x 452 (9th Cir. 2009) ........ 26

*Guglielmino v. McKee Foods Corp.*, 506 F. 3d 696 (9th Cir. 2007) ........ 5

*Hanlon v. Chrysler Corp.*, 150 F. 3d 1011 (9th Cir. 1998) ........ 26

*Hernandez v. Towne Park, Ltd.*,
2012 U.S. Dist. LEXIS 86975 (C.D. Cal. 2012) .......... 17

*Herrera v. Carmax Auto Superstores Cal., LLC*,
2014 U.S. Dist. LEXIS 188729 (C.D. Cal. Jun. 12, 2014) .......... 9

*Kanter v. Warner-Lambert Co.*,
265 F. 3d 853 (9th Cir. 2001) .......... 3

*Kastler v. Oh My Green, Inc.*,
2019 U.S. Dist. LEXIS 185484 (N.D. Cal. Oct. 25, 2019) .......... 7

*Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*,
199 F. Supp. 2d 993 (C. D. Cal. 2002) .......... 5

*Korn v. Polo Ralph Lauren Corp.*,
536 F. Supp. 2d 1199 (E.D. Cal. 2008) .......... 5

*Lew v. Moss*,
797 F. 2d 747 (9th Cir. 1986) .......... 3, 4

*Lewis v. Verizon Commc'ns, Inc.*,
627 F. 3d 395 (9th Cir. 2010) .......... 5

*Lucas v. Michael Kors (USA), Inc.*,
2018 U.S. Dist. LEXIS 78510 (C.D. Cal. May 9, 2018) .......... 7, 8

*Mitchell v. Grubhub, Inc.*,
2015 U.S. Dist. LEXIS 114861 (C.D. Cal. Aug. 28, 2015) .......... 16

*Mondragon v. Capital One Auto Fin.*,
736 F. 3d 880 (9th Cir. 2013) .......... 4

*Oda v. Gucci Am., Inc.*,
2015 U.S. Dist. LEXIS 1672 (C.D. Cal. Jan. 7, 2015) .......... 11

*Patel v. Nike Retail Servs., Inc.*,
58 F. Supp. 3d 1032 (N.D. Cal. 2014) .......... 5, 16, 17

*Ramirez v. Carefusion Res., LLC*,
2019 U.S. Dist. LEXIS 112995 (S.D. Cal. Jul. 5, 2019) .......... 13

*Salazar v. PODS Enterprises, LLC*,
2019 U.S. Dist. LEXIS 78001 (C.D. Cal. 2019) .......... 17

*Salcido v. Evolution Fresh, Inc.*,
2016 U.S. Dist. LEXIS 1375 (C.D. Cal. Jan. 6, 2016) .......... 13

*Sanchez v. Monumental Life Ins. Co.*,
102 F. 3d 398 (9th Cir. 1996) .......... 5

*Schiller v. David's Bridal, Inc.*,
2010 U.S. Dist. LEXIS 81128 (E.D. Cal. 2010) .......... 17

*Stafford v. Dollar Tree Stores*,
2014 U.S. Dist. LEXIS 42564 (E.D. Cal. Mar. 27, 2014) .......... 10

*Stanley v. Distrib. Alts., Inc.*,
2017 U.S. Dist. LEXIS 202035 (C.D. Cal. Dec. 6, 2017) .......... 9

*State Farm Mutual Auto Ins. Co. v. Dyer*,
19 F. 3d 514 (l0th Cir. 1994) .......... 4

*Torrez v. Freedom Mortg. Corp.*,
2017 U.S. Dist. LEXIS 97704 (C.D. Cal. Jun. 22, 2017) .......... 9

*Valdez v. Allstate Ins. Co.*,
372 F. 3d 1115 (9th Cir. 2004) .......... 5

*Vasquez v. Randstad US, L.P.*,
2018 U.S. Dist. LEXIS 4015 (N.D. Cal. 2018) .......... 11

*Viet Nguyen v. Smiths Detection, Inc.*,
2022 U.S. LEXIS 41838 (N.D. Cal. Mar. 9, 2022) .......... 10

**State Cases**

*Cortez v. Purolator Air Filtration Products Co.*,
23 Cal. 4th 163 (2000) .......... 7, 9, 10, 15

*Pineda v. Bank of Am., N.A.*,
50 Cal. 4th 1389 (2010) .......... 14

**Federal Statutes**

28 U.S.C. § 1332 .......... 1, 3, 28

28 U.S.C. § 1332(a) .......... 4, 5

28 U.S.C. § 1332(c) .......... 4

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

28 U.S.C. § 1332(c)(1) .... 4

28 U.S.C. § 1367 .... 3

28 U.S.C. § 1446 .... 1, 28

28 U.S.C. §1441 .... 28

28 U.S.C. § 1441(a) .... 1, 2, 4

28 U.S.C. § 84(d) .... 2

28 U.S.C. § 1446(a) .... 2

28 U.S.C. § 1446(b) .... 2

28 U.S.C. § 1446(b)(3) .... 2

28 U.S.C. § 1446(d) .... 2

**State Statutes**

Cal. Civ. Proc. Code § 340 .... 16

Cal. Civ. Proc. Code § 340(a) .... 12, 13

Cal. Lab. Code § 210(c) .... 12

Cal. Lab. Code § 226(e) .... 13

Cal. Lab. Code § 226.7(c) .... 10

Cal. Lab. Code § 2699(c), (i) .... 16

Cal. Lab. Code § 2699.3 .... 16

Cal. Labor Code § 2699(f)(2) .... 16

Labor Code § 98.6 and 1102.5 .... 25

Labor Code § 98.6(b)(3) and 1102.5(e)(1) .... 25

Labor Code § 201, 202 .... 13, 22

Labor Code § 203 .... 13, 14, 22, 23

Labor Code § 203(a) .... 14

Hirschfeld Kraemer LLP
Attorneys At Law
Santa Monica

Labor Code § 204 and 204b ........ 11
Labor Code § 210 ........ 11, 12
Labor Code § 223 ........ 20
Labor Code § 225.5 ........ 20
Labor Code § 226 ........ 12, 13
Labor Code § 226(a) ........ 23
Labor Code §§ 226(a)(1) and (5) ........ 23
Labor Code § 226(a)(1)-(9) ........ 12
Labor Code § 226.3 ........ 23
Labor Code § 226.7 ........ 10, 11
Labor Code §§ 226.7, 512, 1198 ........ 21
Labor Code §§ 226.7, 516, 1198 ........ 22
Labor Code §§ 226.7 and 1198 ........ 21, 22
Labor Code § 246(i) and (l) ........ 19
Labor Code § 246(b)(1) ........ 19
Labor Code §§ 246(b)(1) and 246.5(c)(1) ........ 19
Labor Code § 246(l) ........ 19
Labor Code § 246.5(c)(1) ........ 19
Labor Code § 248(b)(2) ........ 20
Labor Code § 248.5(b)(2) and (e) ........ 19
Labor Code §510, 1194, 1198 ........ 18
Labor Code § 512 ........ 21
Labor Code § 516 ........ 22
Labor Code § 558(a) ........ *passim*

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

Labor Code § 1174.5 .......... 24, 25

Labor Code §1194.2 .......... 7

Labor Code § 1194 .......... 7, 18

Labor Code § 1197 .......... 17, 18

Labor Code § 1197.1 .......... 18

Labor Code § 1198 .......... 17, 18, 24

Labor Code § 2699 .......... 24

Labor Code § 2751 .......... 24

Labor Code §§ 2751(a) and (b) .......... 24

Labor Code § 2802 .......... 15, 23

**Regulations**

IWC Wage Order .......... 21, 22

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332, 1441(a), and 1446, Defendant BANDON FITNESS (TEXAS), INC. ("Defendant") hereby removes the above-titled action filed by Plaintiff MICHAEL E. OSLEY JR. ("Plaintiff") from the Superior Court of the State of California for the County of San Diego (the "State Court") to the United States District Court for the Southern District of California. Removal is proper for the following reasons:

## I. BACKGROUND AND PROCEEDINGS IN STATE COURT

1. On or about March 11, 2024, Plaintiff, individually and on behalf of all others similarly situated, filed a putative Class Action Complaint against Defendant in the Superior Court of the State of California, County of San Diego, entitled *Michael E. Osley Jr., individually and on behalf of all others similarly situated, v. Bandon Fitness (Texas), Inc., and DOES 1 through 50, inclusive,* Case No. 37-2024-00011471-CU-OE-CTL, alleging the following ten causes of action: (1) Minimum Wage Violations; (2) Failure to Pay All Overtime Wages; (3) Meal Period Violations; (4) Rest Period Violations; (5) Paid Sick Leave Violations; (6) Untimely Payment of Wages; (7) Wage Statement Violations; (8) Waiting Time Penalties; (9) Failure to Reimburse Business Expenses; and (10) Unfair Competition (the "Complaint"). (Declaration of Kirstin E. Muller ["Muller Decl."], ¶¶ 2-3, **Exh. A.**) Upon reviewing and analyzing the Complaint, Defense counsel noticed that the amount in controversy was under the jurisdictional requirement for removal. (*Id.* at ¶ 4.)

2. On April 22, 2024, Defendant filed an Answer to Plaintiff's Complaint in state court. (Muller Decl., ¶ 5, **Exh. B.**)

3. On May 7, 2024, Plaintiff filed a First Amended Class and Representative Action Complaint ("FAC"), which included an eleventh cause of action for Civil Penalties under the California Private Attorneys General Act ("PAGA"). (Muller Decl., ¶¶ 6-7; **Exh. C** ["FAC"].) Attached to the FAC as Exhibit

1 is Plaintiff's PAGA Notice. (FAC, ¶ 91, Exh. 1 [the "PAGA Notice"].) The FAC was emailed by Plaintiff and received by Defendant, through its respective counsel, on May 7, 2024. (Muller Decl., ¶ 7.)

4. Upon reviewing and analyzing the FAC, Defense counsel calculated that the amount in controversy exceeded the jurisdictional requirement for removal. (Muller Decl., ¶ 8.)

5. On June 5, 2024, Defendant timely filed its Answer to Plaintiff's FAC in state court. (Muller Decl., ¶ 9, **Exh. D.**)

## II. COMPLIANCE WITH STATUTORY REQUIREMENTS

6. Notice of removal is timely if filed within thirty (30) days after receipt "by defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) as it is being filed within thirty (30) days from the date of Defendant's receipt of the FAC on May 7, 2024, which is the date Defendant, based on its review and calculations, ascertained this case was removable. (Muller Decl., ¶ 8.)

7. Pursuant to 28 U.S.C. §§ 1441(a) and 84(d), the United States District Court for the Southern District of California (the "Court") is the proper venue for this Removal, because the Complaint was originally filed in San Diego County, which is within the boundaries of the Southern District of California. (Muller Decl., ¶¶ 2, 6, **Exhs. A and B.**)

8. In accordance with 28 U.S.C. § 1446(a), attached to the Declaration of Kirstin E. Muller are true and correct copies of all process, pleadings, and orders served upon Defendant to date, as well as all documents filed within the State Court Action. (Muller Decl., ¶¶ 3, 5, 6, **Exhs. A, B, and C.**)

9. Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be promptly served on Plaintiff and together with a copy of

the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of San Diego. (Muller Decl., ¶ 10, **Exh. E.**)

**III. <u>GROUNDS FOR REMOVAL ON THE BASIS OF DIVERSITY</u>**

10. This Court has original jurisdiction over this action on the basis of diversity jurisdiction under 28 U.S.C. § 1332. A defendant may remove a class action to federal court under traditional diversity jurisdiction, as long as the traditional diversity jurisdiction requirements are satisfied. *Kanter v. Warner-Lambert Co.*, 265 F. 3d 853, 858 (9th Cir. 2001) (holding that "if a named plaintiff in a diversity class action has a claim with an amount in controversy in excess of $75,000, 28 U.S.C. § 1367 confers supplemental jurisdiction over claims of unnamed class members irrespective of the amount in controversy in those claims").

11. Here, as outlined below, the requirements under traditional diversity jurisdiction are satisfied because complete diversity exists between Plaintiff and Defendant and the alleged amount in controversy with respect to Plaintiff's claims exceeds the sum of $75,000 exclusive of interest and costs. As such, this Court may exercise supplemental jurisdiction over the proposed class claims because they arise out of the same case and controversy. *Kanter*, 265 F. 3d at 858.

**A. <u>Complete Diversity of Citizenship Exists Amongst the Parties.</u>**

12. Complete diversity of citizenship exists when each plaintiff is a citizen of a different state from each defendant. *See, e.g., Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). In this case, Plaintiff shares complete diversity from Defendant: Plaintiff is a citizen of California and Defendant is a citizen of Delaware and Texas.

13. ***Plaintiff's Citizenship.*** An individual is a "citizen" of the state in which he is domiciled, and domicile is determined by an individual's residence in a state and his intent to remain indefinitely. *Kanter*, 265 F. 3d at 857. For purposes of diversity jurisdiction, citizenship is determined by the individual's domicile at the time the lawsuit is filed. *Lew v. Moss*, 797 F. 2d 747, 750 (9th Cir. 1986).

14. The FAC alleges that "[Plaintiff] worked for Defendant in California as a non-exempt employee from about April 16, 2022 to the December 5, 2023." (FAC, ¶ 12.) Additionally, Defendant's records support that at all times during Plaintiff's employment with Defendant, Plaintiff's assigned work location and listed residential address were in San Diego, California. (Declaration of Erika Hobson ["Hobson Decl."], ¶¶ 4-5.) Meaning that Plaintiff was working and living in California ***just three months*** prior to filing his Complaint on March 11, 2023. At no point during his employment or this process has Plaintiff indicated a change of residence. (*Id.* at ¶ 4.) Therefore, Plaintiff is a citizen of the State of California for the purposes of diversity jurisdiction. *See, e.g., Mondragon v. Capital One Auto Fin.*, 736 F. 3d 880, 885 (9th Cir. 2013) (person's continuing domicile in a state establishes citizenship "unless rebutted with sufficient evidence of change"); *Lew*, 797 F. 2d at 751-52 (party domiciled in state of party's address); *State Farm Mutual Auto Ins. Co. v. Dyer*, 19 F. 3d 514, 520 (l0th Cir. 1994) (A person's "place of residence is *prima facie* the domicile.")

15. ***Defendant's Citizenship.*** Defendant is a corporation and thus, for the purposes of diversity jurisdiction, it is a citizen of: (1) the state in which it is incorporated and (2) the state in which it maintains its "principal place of business." *See* 28 U.S.C. § 1332(c)(1). Here, Defendant is incorporated in the State of Delaware and, at the time this action commenced and as of today as well as at all times during Plaintiff's employment with Defendant, has maintained a principal place of business in Austin, Texas. (Declaration of Jeffrey Kiecke ["Kiecke Decl."], ¶ 2.) Accordingly, for diversity purposes, Defendant is a citizen of Delaware and Texas, not of California. *See* 28 U.S.C. § 1332(c).

16. ***Doe Defendants.*** DOES 1 through 50 are fictitious defendants whose citizenship is disregarded for removal purposes. *See* 28 U.S.C. § 1441(a).

17. Accordingly, because the parties are of diverse citizenship, as Plaintiff is a citizen of the State of California and Defendant is a citizen of the States of

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

Delaware and Texas, the complete diversity requirement of 28 U.S.C. § 1332(a) is satisfied.

**B. <u>The Amount in Controversy Exceeds $75,000.</u>**

18. Under 28 U.S.C. § 1332(a), federal district courts have diversity jurisdiction over civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs. Where, as here, it is "unclear or ambiguous from the face of a state-court complaint where the requisite amount in controversy is pled," the action may be removed if the defendant establishes, by a preponderance of the evidence, that the amount in controversy is met. *See Guglielmino v. McKee Foods Corp.*, 506 F. 3d 696, 699 (9th Cir. 2007).

19. "Under [the preponderance of the evidence] burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *See Sanchez v. Monumental Life Ins. Co.*, 102 F. 3d 398, 404 (9th Cir. 1996). This "burden is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiffs' claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F. 3d 1115, 1117 (9th Cir. 2004) ("[T]he parties need not predict the trier of fact's eventual award with one hundred percent accuracy.") Rather, "a defendant's reasonable extrapolations from the plaintiff's allegations" may be sufficient to establish the amount in controversy. *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1041 (N.D. Cal. 2014).

20. In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C. D. Cal. 2002). Put differently, "[the amount in controversy is simply an estimate of the total amount in dispute, not

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

a prospective assessment of [the defendant's] liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F. 3d 395, 400 (9th Cir. 2010).

21. By his FAC, Plaintiff seeks unpaid minimum and overtime wages, meal and rest period premiums, unreimbursed expenses, statutory penalties, civil penalties, restitution, prejudgment interest accrued to date, costs of suit incurred, and attorneys' fees. (*See* FAC, Prayer for Relief, ¶¶ e-j, m-n.) Notably, all claims alleged by Plaintiff can be aggregated to meet the jurisdictional amount. *See Bank of Cal. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F. 2d 489, 491 (9th Cir. 1972).

22. Although Defendant denies any liability as to Plaintiff's claims, the amount in controversy based on the claims alleged in the FAC exceeds $75,000.[1] As set forth below, the amount in controversy for Plaintiff's individual claims, exclusive of interest and costs, is conservatively at least **$75,507.56**. Notably, this figure is drawn by applying violation rates for which Plaintiff, himself, advocates by way of his allegations in the FAC and PAGA Notice–which Plaintiff explicitly states is "incorporated into [the FAC]" (FAC, ¶ 95) –and based on facts known to Defendant. This includes, but is not limited to, the following:

23. Plaintiff alleges that he worked for Defendant between April 16, 2022 to December 5, 2023. (FAC, ¶ 12.) This is equivalent to approximately 86 workweeks. (Hobson Decl., ¶ 3.)

24. Plaintiff further alleges that he worked for Defendant as a non-exempt employee and was paid on an hourly basis. (FAC, ¶ 23.) At the time of his termination, Plaintiff was a full-time employee, scheduled to work 40 hours per week, and was paid a base hourly rate of $17. (Hobson Decl., ¶ 8.)

[1] Defendant expressly reserves the right to challenge Plaintiff's claims, adequacy and standing to represent any class or representative group, class definitions, and calculation of damages in all respects.

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

25. Plaintiff was paid on a bi-weekly basis. (Hobson Decl., ¶ 6; PAGA Notice, p. 7 [extract of Plaintiff's wage statement shows bi-weekly pay periods].) During his employment, Plaintiff worked approximately 43 pay periods. (*Id.*)

**1. Failure to Pay Minimum Wages**

26. Plaintiff claims that Defendant "***repeatedly*** underpaid Plaintiff…by encouraging [him] to avoid logging more than 40 hours of work per week." (FAC, ¶ 24.) (emph. added.) More specifically, Plaintiff alleges, ***without qualification***, that he worked "while clocked out" in order to "meet job duties while adhering to Defendant's ***practice*** of clocking less than 40 hours per week." (*Id.* at ¶ 25.) (emph. added.) He further alleges, ***without qualification***, that he was "***required***" to complete job duties during his meal and rest breaks and that even on the occasions when he did take meal and rest breaks, "they were interrupted by job duties." (*Id.* at ¶ 28.) (emph. added.) Plaintiff alleges that because of his off-the-clock work, his time records did not reflect all his hours worked and thus, he was not fully compensated for all hours worked. (*Id.* at ¶ 25.)

27. Based on these allegations, Plaintiff explicitly seeks to recover the full amount of unpaid minimum wages, *plus* liquidated damages[2] under Labor Code §§ 1194 and 1194.2. (FAC, ¶ 35.) As this claim is alleged in tandem with Plaintiff's eleventh cause of action for unfair competition, a four-year statute of limitations applies (*i.e.*, March 11, 2020 to the present). *See Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 178-179 (2000) (holding that the UCL's four-year limitations period governs a UCL action based on failure to pay wages).

28. As Plaintiff does not allege how many hours of unpaid minimum wages he is seeking, Defendant conservatively and reasonably estimates, based on

[2] Liquidated damages are properly included in calculating the amount in controversy. *See Lucas v. Michael Kors (USA), Inc.*, 2018 U.S. Dist. LEXIS 78510, at *15 (C.D. Cal. May 9, 2018).

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

Plaintiff's allegations, that Plaintiff worked, but was not compensated for, at least one (1) hour of regular time per workweek.[3]

29. During Plaintiff's employment with Defendant, Plaintiff worked approximately 38 workweeks in 2022 and 48 workweeks in 2023. (FAC, ¶ 12.) Assuming for the purposes of this analysis only, that Plaintiff worked, but was not compensated for one (1) hour per workweek at the minimum wage, and recovered liquidated damages in an amount equal to the minimum wages allegedly owed, the amount in controversy for this claim would be at least: **$2,704.80** (calculated as: [1 hour of minimum wages per workweek x total number of workweeks during Plaintiff's employment x applicable minimum wage in effect in the City of San Diego][4] x 2 [to account for liquidated damages][5]).

**2. Failure to Pay Overtime Wages**

30. Plaintiff's claim for overtime wages is predicated on two theories of liability. First, Plaintiff alleges that he "**regularly**" completed overtime work while off the clock due to (i) Defendant's "**practice** of not clocking any more than 40 hours of work per week," and (ii) Defendant "allowing [him] remote access to company software" so that he could work off the clock. (FAC, ¶¶ 24-25.) (emph. added.) He further alleges, ***without qualification***, that he was "***required***" to complete job duties during his meal and rest breaks and that even on the occasions when he did take meal and rest breaks, "they were interrupted by job duties." (*Id.* at ¶ 28.) (emph. added.)

[3] *See, e.g., Kastler v. Oh My Green, Inc.*, 2019 U.S. Dist. LEXIS 185484, at *12 (N.D. Cal. Oct. 25, 2019) (one hour of unpaid minimum wage is "a conservative estimate routinely endorsed by courts in evaluating [the] amount in controversy requirement when plaintiff fails to include specific allegations"); *Arreola v. Finish Line*, 2014 U.S. Dist. LEXIS 170464, at *4 (N.D. Cal. Dec. 9, 2014) (allegations that an employer had a regular or consistent practice of violating employment laws "[support] a defendant's assumptions that every employee experienced ***at least one violation once per week***.") (emph. added.)

[4] Based on the above variables and formula, this is calculated as (1 x 38 x $15.00 [minimum wage in 2022 in the City of San Diego]) + (1 x 48 x $16.30 [minimum wage in 2023 in the City of San Diego]).

[5] *See Lucas,* 2018 U.S. Dist. LEXIS 78510 at *15 (holding that because the plaintiff seeks liquidated damages on her minimum wage claim, the total amount of the claim should be doubled).

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

Plaintiff alleges that as a result of off-the-clock work, his time records were not accurate and thus, he was not fully compensated for all overtime hours worked. (*Id.* at ¶ 25.) Second, Plaintiff alleges that even when Defendant paid him overtime, he was paid at an incorrect, lower overtime rate because Defendant did not include his bonuses and commissions when calculating his regular rate of pay. (*Id.* at ¶¶ 26-27.)

31. For purposes of removal, Defendant bases the amount in controversy for this claim only on Plaintiff's first theory regarding off-the-clock work. Based these allegations alone, Defendant reasonably and conservatively assumes that Plaintiff seeks to recover two (2) hours of unpaid overtime per week.[6] Plaintiff seeks to recover the full amount of unpaid overtime wages. (FAC, at ¶ 39.) This claim has a four-year statute of limitations period. *See Cortez*, 23 Cal. 4th at 178-179.

32. Assuming for purposes of removal only, that Plaintiff worked, but was not compensated for, two (2) hours of overtime per workweek, the amount in controversy for this claim would be at least: **$4,386.00**[7] (calculated as: $17 hourly rate of pay x 1.5 overtime rate x 2 hours of overtime per week x 86 workweeks).

### 3. Meal and Rest Break Violations

33. Plaintiff's claims for meal and rest break violations are premised on two theories of liability: First, Plaintiff alleges that Defendant failed to "***consistently***"

---

[6] *See Torrez v. Freedom Mortg. Corp.*, 2017 U.S. Dist. LEXIS 97704, at *7-8 (C.D. Cal. Jun. 22, 2017) (assumption rate of 3 hours of overtime per week was reasonable when based on the allegations in the complaint that defendant "engaged in a pattern and practice" of wage abuse); *Stanley v. Distrib. Alts., Inc.*, 2017 U.S. Dist. LEXIS 202035, at *5-7 (C.D. Cal. Dec. 6, 2017) (finding that pleading "pattern and practice" supports assumption of 2 hours of overtime per week); *see also Herrera v. Carmax Auto Superstores Cal., LLC*, 2014 U.S. Dist. LEXIS 188729, at *17 (C.D. Cal. Jun. 12, 2014) ("Defendant cannot be expected to produce evidence of how often overtime violations may occur. Defendant must be entitled to monetize this claim with a reasonable and conservative estimate.")

[7] Notably, this amount in controversy is ***undercalculated*** because it uses Plaintiff's presumably ***lower*** hourly rate of pay as opposed to his regular rate of pay. In the FAC, he specifically alleges that "in addition to [his] hourly wages, Defendant paid [him] other forms of non-discretionary renumeration, including commissions and bonuses," which Defendant "failed" to include when calculating his regular rate of pay. (FAC, ¶ 26.) If Defendant's removal calculations are challenged, it expressly reserves and does not waive its right to supplement and/or amend its removal submissions to rely on additional data in calculating the amount in controversy on this claim.

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

provide Plaintiff with compliant meal and rest periods and pay him the proper requisite penalty. (FAC, ¶¶ 28, 42-43, 47-48.) (emph. added.) Specifically, Plaintiff alleges that due to his job responsibilities, which "***required***" him to work during his meal and rest periods," and the "***continuous*** flow of [Defendant's] business," he "suffered ***many*** short, missed, late and/or interrupted meal and rest periods." (*Id.* at ¶ 28.) (emph. added.) Moreover, that even "***on the occasion***" where he took his meal and rest period, he still was not able to take full compliant breaks because his breaks were interrupted by job duties. (*Id.*) (emph. added.) Second, Plaintiff claims that even when he was paid a break premium, it was paid at an incorrect, lower rate because Defendant failed to include bonuses and commissions when calculating his regular rate of pay. (*Id.*)

34. Under Labor Code § 226.7, if an employer fails to provide an employee with a compliant meal or rest period, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7(c). The statute of limitation for Plaintiff's claims for meal and rest periods is four years. *See Cortez,* 23 Cal. 4th at 178-179.

35. For purposes of removal, Defendant calculates the amount in controversy on Plaintiff's meal and rest break violations claim based only on his allegations that he was not given compliant meal and rest breaks and was not paid the requisite penalty. Notably, the FAC is silent as to the amount of alleged meal and rest periods violations Plaintiff claims to have suffered and for which he has not been paid the premium. Nonetheless, based on the express allegations above, the FAC contemplates at least a 50 percent violation rate, if not a 100 percent violation rate, and such rate can be properly assumed for purposes of calculating the amount in controversy of Plaintiff's claims for meal and rest period violations. Indeed, courts have found violation rates of 50% to 60% to be reasonable in cases where similar language is used in a pleading to describe the frequency of meal and/or rest period

violations.[8] In fact, case law supports that similar allegations can even support higher violation rates as a matter of law.[9] Therefore, a violation rate of 50% is reasonable and conservative in light of the allegations in the FAC.

36. Assuming for purposes of removal only, that Plaintiff suffered meal and rest break violations at a conservative and reasonable rate of 50%, the amount in controversy for these claims would be at least: **$7,310.00**[10] (calculated as: $17 hourly rate of pay x 2 penalties[11] x 5 workdays x 86 workweeks x 50% violation rate).

**4. Untimely Payment of Wages**

37. Plaintiff alleges, ***without qualification***, that "Defendant willfully failed in their affirmative obligation to timely pay all wages, including paid sick leave and meal and rest period premiums, earned by [Plaintiff] twice during each calendar month on days designated in advance by the employer as regular paydays…in violation of Labor Code §§ 204 and 204b and the IWC Wage Orders." (FAC, ¶ 62.) Plaintiff also alleges that Defendant paid his bonuses and commissions "more than seven days after the pay period in which they were earned." (FAC, ¶ 30.)

---

[8] *See, e.g.*, *Stafford v. Dollar Tree Stores*, 2014 U.S. Dist. LEXIS 42564, at *23 (E.D. Cal. Mar. 27, 2014) (it is "reasonable to estimate that *fifty percent* of meal periods were missed because the plaintiff alleged that 'members of the class were '*routinely*' denied meal periods' as part of a 'policy and practice'"); *Viet Nguyen v. Smiths Detection, Inc.*, 2022 U.S. LEXIS 41838, at *5-6 (N.D. Cal. Mar. 9, 2022) (finding a 60% violation rate to be reasonable due to allegations that meal periods were "consistently" noncompliant and denied as a result of defendant's "policy"); *Oda v. Gucci Am., Inc.*, 2015 U.S. Dist. LEXIS 1672, at *13-14 (C.D. Cal. Jan. 7, 2015) (finding a 50% violation rate reasonable where it was alleged that employees "*sometimes*" did not receive all of their meal and rest periods).

[9] *See, e.g.*, *Vasquez v. Randstad US, L.P.*, 2018 U.S. Dist. LEXIS 4015, at *14 (N.D. Cal. 2018) (finding that a 100% violation rate was reasonable where plaintiff alleged that employees were "regularly required" to work shifts without being provided a meal break and "consistently" required to work through meal and rest periods); *Feltzs v. Cox Commc'ns Cal., LLC*, 2022 U.S. Dist. LEXIS 165467, at *4 (C.D. Cal. 2022) (finding allegations of "consistently" violating meal periods were sufficient to support a 100% violation rate).

[10] Notably, this amount in controversy is ***undercalculated*** because it uses Plaintiff's presumably ***lower*** hourly rate of pay as opposed to his allegedly higher regular rate of pay. *See* Footnote 7, above. If Defendant's removal calculations are challenged, it expressly reserves and does not waive its right to supplement and/or amend its removal submissions to rely on additional data in calculating the amount in controversy on this claim.

[11] See *United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 69 (2011) (holding that Cal. Lab. Code § 226.7 permits up to two premium payments per workday – one for meal violations and one for rest violations).

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

38. Based on these allegations, Plaintiff contends that he is entitled to recover penalties provided under Labor Code § 210, which establishes the penalties for violations of Labor Code §§ 204 and 204b in the amount of $100.00 for the initial pay period in which a violation occurs, and $200 for each subsequent pay period in which a violation occurs, plus 25% of the amount unlawfully withheld. *See* Cal. Lab. Code § 210(c). The statute of limitations for penalties under Labor Code § 210 is one year. Cal. Civ. Proc. Code § 340(a).

39. This claim is derivative of Plaintiff's other alleged Labor Code violations (*i.e.*, failure to pay minimum and overtime wages, meal and rest premiums, etc.). (FAC, ¶¶ 31, 62.) Thus, Defendant can reasonably assume that Plaintiff will seek to recover the initial and subsequent penalty for the time period during which he was employed within the applicable one-year statute of limitations period.

40. During the one-year statute of limitations period for this claim, Plaintiff worked approximately 20 pay periods. Accordingly, for purposes of removal only, Defendant estimates the amount in controversy for this claim to be at least: **$7,500.20**[12] (calculated as: [($100 x 1 initial pay period) + ($200 x 19 subsequent pay periods)] + [25% of the total of unpaid wages and premiums[13]]).

**5. Wage Statement Violations**

41. Plaintiff alleges that, Defendant "knowingly and intentionally failed in their affirmative obligation to provide accurate itemized wage statements to Plaintiff…resulting in injury to Plaintiff." (FAC, ¶ 66.) Specifically, Plaintiff alleges

[12] Again, this amount in controversy is ***undercalculated*** as it is based on the underlying estimates of Plaintiff's claims for unpaid overtime wages and meal and rest premiums, which in turn are calculated using Plaintiff's base hourly rate, not his allegedly higher regular rate of pay. *See* Footnote 7. It also does not include any unpaid wages arising from Plaintiff's fifth cause of action for paid sick leave violations. If Defendant's removal calculations are challenged, it expressly reserves and does not waive its right to supplement and/or amend its removal submissions to rely on additional data in calculating the amount in controversy on this claim.

[13] Based on the conservative and reasonable estimates above, the total of Plaintiff's unpaid minimum and overtime wages and meal and rest premiums is *at least* $14,400.80.

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

that he was issued wage statements that "did not accurately state ***each pay period*** ***all of the information*** required by Labor Code § 226(a)(1)-(9)." (*Id.*) (emph. added.)

42. Based on these allegations, Plaintiff asserts that he is entitled to recover penalties pursuant to Labor Code § 226. (FAC, ¶68.) Section 226 provides a penalty of $50 for the first violative wage statement and $100 for each subsequent violative wage statement, with an aggregate cap of $4,000 per employee. Cal. Lab. Code § 226(e). The statute of limitations for penalties under Labor Code § 226 is one year. Cal. Civ. Proc. Code § 340(a).

43. Given the FAC's express allegation that Defendant issued Plaintiff inaccurate wage statements "***each pay period***," a 100% violation rate is properly applied to this claim. Notably, courts have ***routinely*** accepted use of a 100% violation rate based on allegations similar to those made in this case.[14] Additionally, as we reasonably assume that Plaintiff's FAC alleges at least one hour of unpaid minimum and overtime wages per week, it would be entirely appropriate to apply 100% violation rate to Plaintiff's wage statement claim.[15]

44. During the one-year statute of limitations for this claim, Plaintiff received 20 bi-weekly wage statements. Accordingly, for purposes of removal only, Defendant estimates the amount in controversy of this claim to be at least: **$1,950.00** ($50 x 1 initial wage statement + $100 x 19 subsequent wage statements).

---

[14] *See, e.g., Ramirez v. Carefusion Res., LLC*, 2019 U.S. Dist. LEXIS 112995, at *11-12 (S.D. Cal. Jul. 5, 2019) ("a 100% violation rate assumption—that every wage statement during the one-year period violated § 226—is not unreasonable" where plaintiff alleged that defendant failed to list "*all* the requirements under Labor Code § 226" and claims for unpaid overtime or missed meal and/or rest breaks); *Salcido v. Evolution Fresh, Inc.*, 2016 U.S. Dist. LEXIS 1375, at *7 (C.D. Cal. Jan. 6, 2016) (100% violation rate "followed logically" from allegations of failure to accurately itemize all hours worked).

[15] *See Cabrera v. South Valley Almond Co., LLC*, 2021 U.S. Dist. LEXIS 940881, *31-32 (because the court assumed "one overtime violation, one minimum wage violation, one meal break violation and one rest period violation per week for each putative class member [,i]t follows that each of the bi-weekly wage statements Defendants issued to putative class members during the period in question contained an error of some sort").

**6. Waiting Time Penalties**

45. Plaintiff alleges that "Defendant willfully failed and ***continue*** to fail in their affirmative obligation to pay all wages earned and unpaid to Plaintiff…immediately upon termination of employment…and further failed to pay those sums for 30 days thereafter in violation of Labor Code §§ 201 through 203 and the IWC Wage Orders." (FAC, ¶ 71.) (emph. added.) Specifically, Plaintiff states that this claim is derivative of the other Labor Code violations alleged in his FAC (*i.e.*, failure to pay minimum and overtime wages, break premiums, etc.), including Defendant's practice of incorrectly calculating his regular rate of pay. (FAC, ¶ 31.)

46. Based on these allegations, Plaintiff seeks "waiting time" penalties pursuant to Labor Code § 203(a), which entitles him to recover his last rate of pay for each day that wages remain unpaid following termination, up to a maximum of 30 days of pay. (FAC ¶ 70; Cal. Lab. Code, § 203(a).) The statute of limitations for recovery of waiting time penalties under Labor Code § 203 is three years. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401 (2010).

47. For the purposes of calculating the amount in controversy, Defendant can reasonably assume that Plaintiff worked 8-hour workdays as he was classified to work 40 hours per week during his employment (Hobson Decl., ¶ 8), and the FAC contains allegations of unpaid overtime.[16] Moreover, because Plaintiff's last day of employment was December 5, 2023, and he maintains that, to this day, he has not been paid all wages owed to him, it is reasonable for Defendant to assume that Plaintiff seeks to recover waiting time penalties for the entire 30-day penalty period.[17]

---

[16] *See Calderon v. BKB Constr., LP*, 2017 WL 2618094, at *6 (N.D. Cal. Jun. 16, 2017) (holding that it was reasonable for a defendant to assume that a plaintiff worked a minimum of 8 hours per day based on allegations in the complaint that the plaintiff worked in excess of 8 hours a day.)

[17] *See, e.g., Chavez v. Pratt (Robert Mann Packaging, LLC)*, 2019 U.S. Dist. LEXIS 59399, at *16 (N.D. Cal. Apr. 5, 2019) ("By tying the unpaid final wage claim to his other claims, [plaintiff] makes [defendant's] assumption of 100% violation for unpaid wages reasonable….").

48. Accordingly, for purposes of removal only, Defendant estimates the amount in controversy of this claim to be at least **$4,080.00** (calculated as: $17.00 [Plaintiff's final hourly rate] x 8 hours per day x 30 days).

**7. Failure to Reimburse Business Expenses**

49. Plaintiff alleges that Defendant "***required*** [him] to incur necessary, work-related costs" by "***requir[ing]***" him to download applications on his personal cell phone in order "to clock in and out of work." (FAC, ¶ 29.) (emph. added.) He claims that, because of Defendant's "***practice*** of clocking less than 40 hours per week," he also used his personal cell phone and computer to complete his job duties remotely. (*Id.* at ¶¶ 25, 29.) (emph. added.) He contends that although Defendant "required" him to incur these expenses, "Defendant did not compensate [him] for using [his] personal cell devices for employment-related activities." (*Id.* at ¶ 29.)

50. Based on these allegations, Plaintiff seeks reimbursement of the necessary, work-related expenses that he incurred during his employment with Defendant, pursuant to Labor Code § 2802. This claim has a four-year statute of limitations period as it is pled in tandem with Plaintiff's UCL claim. *See Cortez*, 23 Cal. 4th at 178-179.

51. Notably, Plaintiff does not specify in the FAC what amount he is allegedly owed for business-related expenses, so a reasonable estimate is warranted. It is reasonable to assume from Plaintiff's express allegations that he is seeking to recover unreimbursed expenses for every month worked.[18] Courts have also held a $50 reimbursement to be reasonable to account for the cost of personal cell phone use. *Id.* at 1138. Given that Plaintiff alleges that he incurred expenses for using his

[18] *See Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1137-1138 (where the complaint alleged that employees were "expected and required" to use their personal devices and be available by phone, it was reasonable to assume that each putative class member could recover unreimbursed expenses for every month worked).

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

personal computer *in addition* to his personal cell phone, $50 a month in unreimbursed expenses is a conservative and reasonable estimate for this claim.[19]

52. Accordingly, for purposes of removal only, Defendant estimates the amount in controversy of this claim to be at least: **$1,000.00** ($50/month x 20 months worked during the four-year statute of limitations period.)

**8. PAGA Penalties**

53. In addition to the damages above, Plaintiff's FAC purports to seek to "all remedies available" under PAGA, on behalf of himself and other "aggrieved employees" based on the California Labor Code and California Industrial Wage Commission ("IWC") Wage Order violations alleged therein. (FAC, ¶ 96; *see also* Paragraph 1, above.)

54. The statute of limitations on claims for PAGA penalties is one year from the date the PAGA letter was filed with the Labor Workforce Development Agency ("LWDA"). *See* Cal. Lab. Code § 2699.3; Cal. Civ. Proc. Code § 340. Here, Plaintiff filed his PAGA letter with the LWDA on February 28, 2024. (FAC, ¶ 90). Thus, the PAGA liability period is between February 28, 2023 to the present (the "PAGA Period"). **During the PAGA Period, Plaintiff worked approximately 21 pay periods.** (Hobson Decl., ¶ 7.)

55. The default penalty for a PAGA violation is $100 for the first violation and $200 for subsequent violations, unless there is already an established civil penalty provided for such violation. Cal. Labor Code § 2699(f)(2). Of the civil penalties awarded in a PAGA case, 75% are paid to the LWDA and 25% are awarded to the aggrieved employees, defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(c), (i).

---

[19] *Anderson*, 556 F. Supp.3d at 1138 (holding that a $50 reimbursement to be reasonable to account for the cost of personal cell phone use).

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

56. The amount in controversy for a PAGA claim, includes all civil penalties attributable to alleged violations committed against all named plaintiffs. *See, e.g., Mitchell v. Grubhub, Inc.*, 2015 U.S. Dist. LEXIS 114861, *15 (C.D. Cal. Aug. 28, 2015) ("the amount in controversy includes the total amount of penalties for PAGA claims"); *Patel,* 58 F. Supp. 3d at 1043-48 ("the entire amount of PAGA penalties attributable to [plaintiff]'s claims count towards the amount in controversy"). Notably, there is a split of authority between the courts as to whether only a plaintiff's 25% share of the PAGA penalties is considered or whether the additional 75% that the LWDA collects is considered as well. *Compare Biag v. King George – J&J Worldwide Services, LLC,* 2020 U.S. Dist. LEXIS 129528, at *28-29 (S.D. Cal. Jul. 22, 2020) (considering only plaintiff's 25% portion of the PAGA claims for the amount in controversy), *with Patel,* 58 F. Supp. 3d at 1032 ("courts should take into account 100% of the penalties stemming from the plaintiff's claims"). **Although the issue remains undecided, the jurisdictional minimum is met in this case with either allocation, as will be discussed below.**

57. Moreover, when determining the amount in controversy, it is also appropriate to "stack" alleged PAGA penalties; *i.e.*, assume that "multiple PAGA penalties can be assessed for the same pay period for different Labor Code violations." *Hernandez v. Towne Park, Ltd.*, 2012 U.S. Dist. LEXIS 86975, at *59 n. 77 (C.D. Cal. 2012); *see also Schiller v. David's Bridal, Inc.*, 2010 U.S. Dist. LEXIS 81128, at *15 (E.D. Cal. 2010) ("Potential PAGA Penalties May be Aggregated or 'Stacked'" for purposes of the amount in controversy). A removing defendant may also aggregate multiple sets of civil penalties for a single Labor Code section allegedly violated if the plaintiff alleges that the section was violated in multiple ways in the same pay period. *Salazar v. PODS Enterprises, LLC,* 2019 U.S. Dist. LEXIS 78001, at *15-17 (C.D. Cal. 2019). Although it is "highly unlikely" a PAGA plaintiff could actually "recover PAGA penalties for each separate type of



HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

Labor Code violation," such recovery is "possible" and therefore in controversy because no biding authority conclusively precludes it. *Id.* at *16-17.

58. Here, Plaintiff's PAGA Notice explicitly states that he seeks to recover PAGA penalties, as follows:

59. ***Unpaid Hours Worked/Minimum Wages:*** Plaintiff seeks PAGA penalties for Defendant's alleged failure to pay all minimum wages, based on his off-the-clock work theory. (*See* Paragraph 26, above; PAGA Notice, p. 3.) Based on these allegations, Plaintiff alleges that Defendant violated Labor Code §§ 1194, 1197, 1198, and the IWC Wage Orders. (FAC, ¶ 95[a].)

60. As such, Plaintiff explicitly seeks to recover PAGA penalties pursuant to (i) Labor Code § 558(a), which establishes the penalties for violations of the IWC Wage Orders in the amounts of $50 for the initial pay period in which the employee was underpaid and $100 for each subsequent pay period in which the employee was underpaid; (ii) Labor Code § 1197.1, which establishes the penalties for violations of Labor Code § 1197 in the amounts of $100 for the initial pay period in which the violation occurred and $250 for each subsequent pay period in which violations occurred; and (iii) Labor Code § 2699(f) (*i.e.*, the default PAGA penalty provision) for violations of Labor Code §§ 1194 and 1198.

61. Based on the foregoing, Defendant calculates the amount in controversy for this claim to be at least: **$15,350.00**.

| **Labor Code § 2699(f) Default PAGA Penalties** | | | |
|---|---|---|---|
| LC Violations | Initial Penalty ($100 x 1 pay period) | Subsequent Penalties ($200 x 20 pay periods) | Subtotal |
| LC 1194 | $100 | $4,000 | **$4,100** |
| LC 1198 | $100 | $4,000 | **$4,100** |
| **Labor Code § 558(a) Penalties** | | | |
| LC Violations | Initial Penalty ($50 x 1 pay period) | Subsequent Penalties ($100 x 20 pay periods) | Subtotal |
| IWC Wage Orders | $50 | $2,000 | **$2,050** |
| **Labor Code § 1197.1 Penalties** | | | |
| LC Violations | Initial Penalty ($100 x 1 pay period) | Subsequent Penalties ($250 x 20 pay periods) | Subtotal |
| LC 1197 | $100 | $5,000 | **$5,100** |

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

62. ***Failure to Pay All Overtime Wages:*** Plaintiff seeks PAGA penalties for Defendant's alleged failure to pay all overtime wages, based on his off-the-clock work theory and incorrect overtime rate theory. (*See* Paragraph 30, above; PAGA Notice, pp. 4-5.) Based on these allegations, Plaintiff alleges that Defendant violated Labor Code §§ 510, 1194, 1198, and the IWC Wage Orders. (FAC, ¶ 95[b].)

63. As such, Plaintiff explicitly seeks to recover penalties pursuant to (i) Labor Code § 558(a), which establishes penalties for violations of Labor Code § 510 and the IWC Wage Orders and (ii) Labor Code § 2699(f) (*i.e.*, the default PAGA penalty provision) for violations of Labor Code §§ 1194 and 1198. (FAC, ¶ 95[b]; PAGA Notice, pp. 4-5.)

64. Based on the foregoing, Defendant calculates the amount in controversy for this claim to be at least: **$12,300.00**.

| **Labor Code § 2699(f) Default PAGA Penalties** | | | |
|---|---|---|---|
| LC Violations | Initial Penalty ($100 x 1 pay period) | Subsequent Penalties ($200 x 20 pay periods) | Subtotal |
| LC 1194 | $100 | $4,000 | **$4,100** |
| LC 1198 | $100 | $4,000 | **$4,100** |
| **Labor Code § 558(a) Penalties** | | | |
| LC Violations | Initial Penalty ($50 x 1 pay period) | Subsequent Penalties ($100 x 20 pay periods) | Subtotal |
| LC 510 | $50 | $2,000 | **$2,050** |
| IWC Wage Orders | $50 | $2,000 | **$2,050** |

65. ***Paid Sick Leave Violations:*** Plaintiff seeks PAGA Penalties for the following four types of paid sick leave violations: First, Plaintiff alleges that Defendant failed to provide Plaintiff with all sick leave accrued in violation of Labor Code § 246(b)(1). (PAGA Notice, p. 6.) Second, Plaintiff alleges, ***without qualification,*** that Defendant failed to provide him with proper notice of his available paid sick leave balance in violation of Labor Code § 246(i). (*Id.*) Third, Plaintiff alleges that Defendant failed to pay paid sick leave at the lawful rate in violation of Labor Code § 246(l). (*Id.* at p. 7.) Fourth, Plaintiff alleges that, on at least one occasion, Defendant denied Plaintiff the right to use sick leave in violation of Labor Code § 246.5(c)(1). (*Id.*)

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

66. Labor Code §§ 248.5(b)(2) and (e) establishes the penalties for violations related to paid sick days being unlawfully withheld (*i.e.*, Labor Code §§ 246(b)(1) and 246.5(c)(1), in the "dollar amount of paid sick days withheld from the employee multiplied by three; or two hundred fifty dollars ($250), whichever amount is greater," but not to exceed an aggregate penalty of $4,000. Cal. Lab. Code §§ 248.5(b)(2), (e). As for the remaining Labor Code violations (*i.e.*, Labor Code §§ 246(i) and (l)), because there is not already an established civil penalty provided for such violations, PAGA's default penalty provision applies.

67. Defendant will reasonably assume a 100% violation rate for Plaintiff's claim for violation of Labor Code § 246(i) as Plaintiff does not allege that he ever received any proper notice of his sick leave balance. As for the remaining claims, Defendant will conservatively assume that Plaintiff will seek the initial and/or minimum penalties. Accordingly, Defendant calculates the amount in controversy of Plaintiff's PAGA claim for paid sick leave violations to be at least: **$4,700.00**.

| **Labor Code § 2699(f) Default PAGA Penalties** | | | |
|---|---|---|---|
| LC Violations | Initial Penalty ($100 x 1 pay period) | Subsequent Penalties ($200 x 20 pay periods) | Subtotal |
| LC 246(i) | $100 | $4,000 | **$4,100** |
| LC 246(l) | $100 | -- | **$100** |
| **Labor Code § 248(b)(2) Penalty** | | | |
| LC Violations | Minimum Penalty | | Subtotal |
| LC 246(b)(1) | $250 | | **$250** |
| LC 246.5(c)(1) | $250 | | **$250** |

68. ***Secretly Paying a Lower Wage:*** Plaintiff seeks PAGA Penalties for Defendant's alleged secret underpayment and withholding of wages, based on (i) his underlying off-the-clock work theory; (ii) Defendant's alleged failure to provide Plaintiff with a written explanation of how his bonuses and commissions were to be calculated; and (iii) Defendant's alleged failure to compensate him for the amount for which he was contracted. (PAGA Notice, p. 8.)

69. Based on these allegations, Plaintiff contends that Defendant violated Labor Code § 223. (PAGA Notice, p. 8.) Labor Code § 225.5 establishes the

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

penalties for violations of Labor Code § 223, in the amount of $50 for the first violation and $100 for each subsequent willful violation, plus 25% of the amount unlawfully withheld. Cal. Lab. Code § 225.5.

70. As this claim is, in part, derivative of Plaintiff's underlying claims for unpaid wages and premiums, it is reasonable to assume that Plaintiff is seeking both the initial and subsequent penalty. Accordingly, Defendant calculates the amount in controversy for this claim to be at least: **$7,700.20**[20] (calculated as: $100 [$100 initial penalty x 1 pay period] + $4,000 [$200 subsequent penalty x 20 pay periods] + $3,600.20 [25% of total withheld[21]]).

71. ***Unpaid Meal Period Premium Wages:*** Plaintiff seeks PAGA penalties for Defendant's meal period violations, based on the same allegations discussed herein. (*See* Paragraph 33, above; PAGA Notice, pp. 8-9.)

72. Based on these allegations, Plaintiff contends that Defendant violated Labor Code §§ 226.7, 512, 1198 and the IWC Wage Orders. (FAC, ¶ 95[d].) As such, Plaintiff explicitly seeks to recover penalties pursuant to (i) Labor Code § 558(a), which establishes the penalties for violations of Labor Code § 512 and the IWC Wage Order; and (ii) and Labor Code § 2699(f), which applies to violations for Labor Code §§ 226.7 and 1198. (PAGA Notice, pp. 8-9.)

73. Given our conservative and reasonable estimate of a 50% violation rate for Plaintiff's underlying meal period claim, it is reasonable for us to assume that Plaintiff suffered at least one meal break violation per week during the PAGA period. Accordingly, Defendant calculates the amount in controversy of Plaintiff's PAGA claim for meal period violations to be at least: **$12,300.00.**

**Labor Code § 2699(f) Default PAGA Penalties**

[20] Notably, this amount in controversy is ***undercalculated***. *See* Footnote 7. If Defendant's removal calculations are challenged, it expressly reserves and does not waive its right to supplement and/or amend its removal submissions to rely on additional data in calculating the amount in controversy on this claim.

[21] Based on the conservative and reasonable estimates above, the total of Plaintiff's unpaid minimum and overtime wages and meal and rest premiums is *at least* $14,400.80.

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

| LC Violations | Initial Penalty ($100 x 1 pay period) | Subsequent Penalties ($200 x 20 pay periods) | Subtotal |
|---|---|---|---|
| LC 226.7 | $100 | $4,000 | **$4,100** |
| LC 1198 | $100 | $4,000 | **$4,100** |
| **Labor Code § 558(a) Penalties** | | | |
| LC Violations | Initial Penalty ($50 x 1 pay period) | Subsequent Penalties ($100 x 20 pay periods) | Subtotal |
| LC 512 | $50 | $2,000 | **$2,050** |
| IWC Wage Orders | $50 | $2,000 | **$2,050** |

74. ***Unpaid Rest Period Premium Wages:*** Plaintiff seeks PAGA penalties for Defendant's rest period violations, based on the same allegations discussed herein. (*See* Paragraph 33, above; PAGA Notice, p. 10.)

75. Based on these allegations, Plaintiff contends that Defendant violated Labor Code §§ 226.7, 516, 1198 and the IWC Wage Orders. (FAC, ¶ 95[e].) As such, Plaintiff explicitly seeks to recover penalties pursuant to (i) Labor Code § 558(a), which establishes the penalties for violations of Labor Code § 516 and the IWC Wage Order; and (ii) and Labor Code § 2699(f), which applies to violations for Labor Code §§ 226.7 and 1198. (PAGA Notice, p. 10.)

76. Given that we conservatively and reasonably estimated a 50% violation rate for Plaintiff's underlying rest period claim, it is reasonable for us to assume that Plaintiff suffered at least one rest break violation per week during the PAGA period. Accordingly, Defendant calculates the amount in controversy of Plaintiff's PAGA claim for meal period violations to be at least: **$12,300.00**.[22]

77. ***Untimely Payment of Wages Upon Separation of Employment:*** Plaintiff seeks recovery for Defendant's alleged failure to timely pay all wages upon separation of employment, based on the same allegations discussed herein. (*See* Paragraph 45, above; PAGA Notice, p. 12.)

78. Based on these allegations, Plaintiff asserts that Defendant violated Labor Code §§ 201, 202, and 203. (FAC, 95[g].) As such, Plaintiff seeks to recover

[22] Calculations for this claim mirror the calculations under Plaintiff's PAGA claim for meal period violations. (*See* Paragraph 73, above.)

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

penalties pursuant to Labor Code § 2699(f), which applies to violations of Labor Code §§ 201-203. (PAGA Notice, p. 12.)

79. For purposes of calculating the amount in controversy, Defendant reasonably assumes that Plaintiff will seek a penalty for an alleged violation of either Labor Code § 201 *or* 202 (but not both). Defendant also assumes that Plaintiff will seek to recover (i) only the initial PAGA penalty for the violation of Labor Code § 201/202 that allegedly occurred in the pay period that Plaintiff's employment with Defendant ended and (ii) the initial and subsequent PAGA penalties for violation of Labor Code § 203 that allegedly occurred during the pay periods subsumed within the 30-day, post-separation waiting time penalties period provided under the statute.

80. Based on the foregoing, Defendant calculates the amount in controversy of Plaintiff's PAGA claim for untimely payment of wages upon separation of employment to be at least: **$8,200.**

| **Labor Code § 2699(f) Default PAGA Penalties** | | | |
|---|---|---|---|
| LC Violations | Initial Penalty ($100 x 1 pay period) | Subsequent Penalties ($200 x 20 pay periods) | Subtotal |
| LC 201/202 | $100 | $4,000 | **$4,100** |
| LC 203 | $100 | $4,000 | **$4,100** |

81. ***Wage Statement Violations:*** Plaintiff seeks PAGA penalties claim for Defendant's alleged wage statement violation, based on the same claims discussed herein. (*See* Paragraph 41, above; PAGA Notice, pp. 12-13.) Based on these allegations, Plaintiff contends that Defendant violated Labor Code §§ 226(a)(1) and (5), and as a result, seeks penalties pursuant to Labor Code § 226.3. (FAC, ¶ 95[h]; PAGA Notice at p. 13.)

82. Labor Code § 226.3 establishes the civil penalties for a violation of Labor Code § 226(a) in the amount of "two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation." Cal. Lab. Code § 226.3. Accordingly, Defendant calculates the amount in controversy of Plaintiff's PAGA claim for wage

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

statement violations to be at least: **<u>$20,250</u>** (calculated as: $250 [$250 initial penalty x 1 pay period] + $20,000 [$1,000 subsequent penalty x 20 pay periods]).

83. ***Unreimbursed Business Expenses:*** Plaintiff seeks PAGA penalties for Defendant's alleged failure to reimburse business expenses based on the same allegations discussed herein. (*See* Paragraph 49, above; PAGA Notice, pp. 13-14.) Based on these allegations, Plaintiff contends that Defendant violated Labor Code § 2802, for which he seeks to recover penalties under Labor Code § 2699(f). (FAC, ¶ 95[i]; PAGA Notice, p. 14.) Accordingly, Defendant calculates the amount in controversy of Plaintiff's PAGA claim for failure to reimburse business expenses to be at least: **<u>$4,100</u>** (calculated as: $100 [$100 initial penalty x 1 pay period] + $4,000 [$200 subsequent penalty x 20 pay periods]).

84. ***Failure to Provide Commission Agreement:*** Plaintiff seeks PAGA penalties based on Defendant's alleged failure to provide him with a written commission plan. (FAC, ¶ 26; PAGA Notice, p. 14.) Based on these allegations, Plaintiff contends that Defendant violated Labor Code §§ 2751(a) and (b). (PAGA Notice, p. 14.) Because there is not already an established civil penalty provided for violations of Labor Code § 2751, PAGA's default penalty provision applies.

85. As Plaintiff's FAC does not allege that he ever received a signed, written commission agreement at any point during his employment with Defendant, Defendant reasonably assumes that Plaintiff is seeking both the initial penalty and subsequent penalties for this claim. Accordingly, Defendant calculates the amount in controversy of Plaintiff's PAGA claim for violation of Labor Code § 2751 to be at least: **<u>$4,100</u>** (calculated as: $100 [$100 initial penalty x 1 pay period] + $4,000 [$200 subsequent penalty x 20 pay periods]).

86. ***Failure to Maintain Accurate Records:*** Plaintiff seeks PAGA penalties for Defendant's alleged failure to maintain accurate records, which he alleges was caused by Defendant's policies and practices, "including the failure to accurately account for all wages earned or hours worked." (PAGA Notice, p. 14-15.) Based on

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

these allegations, Plaintiff contends that Defendant violated Labor Code §§ 1174 and 1198 and the IWC Wage Orders, for which he explicitly seeks to recover penalties pursuant to Labor Code §§ 1174.5 and 2699. (*Id.*)

87. Labor Code § 1174.5 establishes the penalties for violations of Labor Code § 1174 in the amount of $500 per employee. Cal. Lab. Code § 1174.5. As for Labor Code § 1198, because there is not already an established civil penalty provided for such violations, PAGA's default penalty provision applies.

88. Based on Plaintiff's ***unqualified*** allegations of Defendant's alleged recordkeeping violations, Defendant can reasonably assume that Plaintiff will seek to recover penalties for each of the 21 pay periods Plaintiff worked during the PAGA period. Consequently, Defendant calculates the amount in controversy on Plaintiff's PAGA claim for failure to maintain accurate records to be at least: **$4,600.**

| **Labor Code § 2699(f) Default PAGA Penalties** | | | |
|---|---|---|---|
| LC Violations | Initial Penalty ($100 x 1 pay period) | Subsequent Penalties ($200 x 20 pay periods) | Subtotal |
| LC 1198 | $100 | $4,000 | **$4,100** |
| **Labor Code § 1174.5 Penalty** | | | |
| LC Violations | Flat Penalty | | Subtotal |
| LC 1174 | $500 | | **$500** |

89. ***Retaliation:*** Plaintiff claims that Defendant retaliated against him for attempting to use sick leave and for complaining to Defendant about workplace conditions. (PAGA Notice, pp. 7 and 15.) Based on these allegations, Plaintiff contends that Defendant violated Labor Code §§ 98.6 and 1102.5, for which he explicitly seeks to recover penalties pursuant to Labor Code §§ 98.6(b)(3) and 1102.5(e)(1), as well as "***other compensatory, statutory, and punitive damages***." (PAGA Notice, p. 15.) (emph. added.)

90. Labor Code §§ 98.6(b)(3) and 1102.5(e)(1) each provide $10,000 in civil penalties in addition to any other remedies Plaintiff may recover. Cal. Lab. Code §§ 98.6(b)(3) and 1102.5(e)(1). Consequently, Defendant calculates the amount in controversy for this claim to be at least: **$20,000.**

| Labor Code §§ 98.6(b)(3) and 1102.5(e)(1) Penalties | | |
|---|---|---|
| LC Violations | Flat Penalty | Subtotal |
| LC 98.6 | $10,000 | **$10,000** |
| LC 1102.5 | $10,000 | **$10,000** |

91. Based on the foregoing, Plaintiff seeks a total of at least $125,900.20 in PAGA Penalties.[23] If the Court considers 100% of the PAGA penalties sought when calculating the amount in controversy, the jurisdictional minimum is met based on Plaintiff's PAGA claim alone (*i.e.*, $125,900.20 far exceeds the $75,000 minimum).

92. Notably, if the Court only considers 25% of the PAGA penalties sought, this would amount to **$31,475.05**. As discussed below, this amount coupled with the total amount of Plaintiff's individual damages ($28,931.00[24]) and statutory attorneys' fees ($15,101.51), brings the total amount in controversy to **$75,507.56**, which still exceeds the $75,000 jurisdictional minimum.

**9. Statutory Attorneys' Fees**

93. Plaintiff also explicitly seeks attorneys' fees pursuant to various provisions of the California Labor Code. (FAC, ¶¶ 35, 39, 44, 59, 63, 68, 72, 75, 81, 63, 96, Prayer for Relief, ¶ h; PAGA Notice, p. 16.) In the Ninth Circuit, when attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal. *See, e.g., Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998) (claims for attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory). Where, as here, a common fund recovery is sought, the Ninth Circuit uses a benchmark rate of 25% of the total potential award as an estimate for attorneys'

[23] This is the sum of the following PAGA penalties: $15,350 (unpaid minimum wage) + $12,300 (unpaid overtime) + $4,700 (paid sick leave violations) + $7,700.20 (secret underpayment of wages) + $12,300 (meal period violations) + $12,300 (rest period violations) + $8,200 (failure to pay all wages upon separation of employment) + $20,250 (wage statement violations) + $4,100 (failure to reimburse for necessary business expenses) + $4,100 (failure to provide a commission agreement) + $4,600 (failure to maintain accurate records) + $20,000 (retaliation)

[24] This is the sum of Plaintiff's individual damages: $2,704.80 (unpaid minimum wage) + $4,386 (unpaid overtime) + $7,310 (meal and rest period violations) + $7,500.20 (untimely payment of wages) + $1,950 (wage statement violations) + $4,080 (waiting time penalties) + $1,000 (failure to reimburse business expenses).

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

fees. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% … as a benchmark award for attorney fees.")[25]

94. Thus, applying the 25% benchmark for attorneys' fees used in the Ninth Circuit to the dollar amount of the total award, Defendant calculates the amount in controversy on the statutory attorneys' fees allocable to the total of Plaintiff's individual damages and his PAGA penalties, to be at least: **$15,101.51** (calculated as: 25% x [$28,931.00 (total individual damages) + $31,475.05 (total PAGA penalties attributable to Plaintiff)]).

**10. Summary of Amount in Controversy**

95. Based on the foregoing, and using reasonable and conservative estimates, the amount in controversy in this action is not less than **$75,507.56**, which exceeds the $75,000 jurisdictional threshold:

| Cause of Action/Claim | Amount in Controversy |
|---|---|
| Total Individual Damages[26] | $28,931.00 |
| Civil Penalties under PAGA (25%) | $31,475.05 |
| **Subtotal (Individual Damages + PAGA)** | **$60,406.05** |
| **Statutory Attorney Fees (25% of Subtotal)** | **$15,101.51** |
| **Total** (Subtotal + Statutory Attorneys' Fees) | **$75,507.56** |

96. In sum, Plaintiff's claims collectively make it facially plain that Plaintiff is seeking more than the minimum amount, exclusive of interest and costs, needed to meet the $75,000 amount in controversy requirement. Notably, these calculations do not even take into consideration Plaintiff's additional claims, including, *inter alia*, his allegations that Defendant improperly calculated his regular rate of pay when paying his overtime wages, break premiums, and sick leave. (FAC, ¶¶ 38, 43, 48,

[25] *See also Glass v. UBS Fin. Servs.*, 331 F. App'x 452, 457 (9th Cir. 2009) (finding 25% of total award, rather than 25% of amount actually collected by the class, "was proper, and in line with Ninth Circuit precedent").

[26] For calculations of Plaintiff's individual damages, *see* Footnote 24.

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

and 52). Consideration of these additional allegations thus would only extend the degree to which the amount in controversy minimum is exceeded (as the asserted entitlement to attorneys' fees would also increase as amounts related to these additional claims are added).

97. Accordingly, because there is complete diversity of citizenship between Plaintiff and Defendant, and the minimum estimated amount in controversy in this action, based on Plaintiff's own allegations in the FAC, exceeds the $75,000 jurisdictional threshold, this Court has original jurisdiction over this action.

## IV. CONCLUSION

98. Based on the foregoing, this Court has jurisdiction over this action under the provisions of 28 U.S.C. § 1332, in that this action is between citizens of different States and involves a controversy which exceeds the value of $75,000.00, exclusive of interest and costs. Accordingly, this action is properly removed to this Court pursuant to the provisions of 28 U.S.C. §§ 1441 and 1446.

Dated: June 6, 2024

**HIRSCHFELD KRAEMER LLP**

By: ______________________________
Kirstin E. Muller
Attorney for Defendant
BANDON FITNESS (TEXAS), INC.

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

## CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am a citizen of the United States and a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 233 Wilshire Boulevard, Suite 600, Santa Monica, California 90401. On 6/6/24, I served the following document(s) by the method indicated below:

**NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**

☒ by placing the document(s) listed above in a sealed envelope(s) with postage thereon fully prepaid, in the **United States mail** at San Francisco, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited in the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ by personally **delivering** the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by placing the document(s) listed above in a sealed envelope(s) and consigning it to an **express mail service** for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below.

☐ by transmitting via **email** on this date the document(s) listed above to the email address(es) set forth below.

☒ by submitting an **electronic** version of the document(s) listed above to the court's approved electronic service vendor.

Nicholas J. Ferraro, Esq.
Lauren N. Vega, Esq.
Mariela Romo, Esq.
FERRARO VEGA EMPLOYMENT LAWYERS, INC.
3333 Camino del Rio South, Suite 300
San Diego, CA 92108

Email:
nick@ferrarovega.com
lauren@ferrarovega.com
mariela@ferrarovega.com

*Attorneys for Plaintiff*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I am employed by an officer of a member of the bar of this Court at whose direction the service was made. Executed on June 6, 2024at Santa Monica, California.

Blanca Peralta